The last case we have for today, Attendant Number 10, is Number 129227, Project44, Inc. v. FourKites, Inc. Counsel for the appellant, may proceed.  My name is Scott Gilbert, and I represent the defendant appellant in this matter, FourKites, Inc. Who qualifies as a third party for purposes of satisfying the publication requirement in a defamation claim brought by a corporation? How this court answers that question will make law in Illinois and shape law around the country. The appellate court answered this question by ruling that anyone affiliated with the legal entity, regardless of how closely that individual may be aligned with the legal entity, is a third party for purposes of publication. We contend that that answer is incorrect for several reasons. First, it removes the publication requirement completely and results entirely at odds with the role the tort of defamation is intended to play under the law. Second, it ignores the practical reality of how legal entities work and needlessly expands the tort. Third, the expanded scope that flows from the appellate court's opinion is not alleviated through the application of privilege. The facts of this case are relatively straightforward. Two anonymous emails were sent to three members of P-44's executive leadership team, one to its chief revenue officer and one to two members of its board of directors. There is no evidence or even an allegation that P-44 was actually damaged in any way as a result of these emails. P-44's complaint alleges that it was damaged in the community based on information and belief. Eleven months passed between when the emails were sent and when the complaint was filed, and in that time P-44 could not identify any actual reputational harm. We highlighted that fact in our brief to this court, and P-44 made no response. And that silence is critical because P-44 has alleged defamation per se, meaning that damages should be presumed and need not be proven. With that background, I will turn to why the appellate court's opinion was incorrect and why the trial court's decision should be affirmed. First, the publication requirement plays a critical gatekeeping role and must be maintained in relation to corporate plaintiffs. And neither the plaintiff nor the appellate court has offered a compelling reason to jettison it altogether. At its base, the tort of defamation protects the value of one's reputation within the community. That is why publication to a third party is required. No matter how hurtful or upsetting a comment about me might be when it's made, excuse me, when I hear it, the statement is not defamatory if it is made solely to me. And that has long established black letter law in Illinois and really across the country, that that's not satisfied when the statement's made only to the person who's defamed. So your argument, counsel, is an officer or employee of the company equals the company? Not necessarily all employees, Your Honor. And we've never argued before that the trial court, the appellate court, or this court, that the decision before this court is that broad. But somewhere there needs to be the human embodiment of the company for purposes of publication or else there is no longer a publication requirement whatsoever when the plaintiff is a corporation. And that raises some significant concerns. Well, counsel, is it not possible to impugn or damage the reputation of the company by saying things to officers of the company? I think the role that they're playing there, Your Honor, I don't think there's a significant risk of impinging their character within the larger community. They are the ones driving it. If the law recognizes that an artificial being like a company can be concerned about its reputation, then it must equally consider who is the company in order to act on those concerns. This analysis begs the question, who acts to cultivate and preserve the company's reputation? The answer is the company's leadership does. Counsel, in this case, the officers were being cautioned of the dangers that this company posed and maybe you should get out now, basically. Isn't that concerning? Well, I think the nature, and I think that goes back to the opening issue, that the fact that something might be hurtful or concerning doesn't get us to the issue or past the issue of publication. There has to be some risk of reputational harm or else we are punishing people for the words that they are saying without any concern about damages. And I think that's what makes this case unique, what makes a per se defamation claim unique. But isn't there the potential that this officer would take action based on this communication and explain or communicate to others why that action was taken and can't that potentially harm the reputation? I don't think that there would necessarily be a republication, Your Honor. Just like with an individual, it doesn't necessarily turn it into a publication even though there's a risk that an individual may repeat what was said. I do think some of the concerns that you're raising, though, go to the issue of whether we should expand this tort beyond its borders. The tort itself is designed to protect reputational harm and only reputational harm. So it doesn't address things that lead to hurtful feelings, but also, Your Honor, it doesn't result in other forms of damages. And as I was saying, one of the things that makes this really concerning is that in a per se defamation case, we're not even going to consider whether or not there have actually been damages. They don't have to be alleged and proved. And now we're also not going to consider whether there's been a material risk of reputational harm. Counsel, are you saying that there can never be reputational damage if the publication is to an employee or a person that's already working for the company? No, Your Honor. We are not saying that. And I think I would direct the Court's attention to the Fawcett case, which we cited in our brief. But somewhere there, so in that case, Your Honor, and I'll turn to it specifically because I think it's worth taking some time, the defamatory statements alleged in that case consisted of claims that the company's management had manipulated the company's stock and had, in addition, failed to honestly report the status of the company's business. Those comments were made to the company's president and vice president. Now, if those statements had been made to any employee, we're not saying that that's the same thing as a communication to the company itself. We are saying that somewhere along the line, somewhere along that corporate ladder, a line does need to be drawn, Your Honor. The people that drive the determinations should be considered the company for purposes of publication. If a company can have emotions, such as concern, including concern about its reputation, then who controls those emotions? If you think of a piece of litigation where there's a corporate party involved and the mediator walks in and tells you, look, I think it's going to be hard to settle this case because the corporation is angry, that doesn't mean that the corporation is experiencing the emotion of anger, that a legal fiction is experiencing that emotion. What it means is that the people who run that company are angry because those people decide how the company will act and settlement may not be possible. But is the fact that in Fawcett we had basically one employee saying things to another employee, does that matter because that's a little bit different than our situation here, right? It is. I do believe in Fawcett, Your Honor. There was a statement made to a non-employee. So there was a statement from an outside individual to the president and vice president of the company who was unaffiliated. But I do think Your Honor's point goes to intra-corporate communication cases, right? And that's something that the appellate court spent a significant amount of its time focused on. The issue is this is not an intra-company communication case. Those are materially distinguishable and I don't think are very instructive. So if you look at Popco and all the other cases cited by the plaintiffs in this case, you'll see that those cases largely involve a comment from one person to another person about a third real person. And that changes the game quite a bit because there's clearly been a publication there. It's about a real person. We don't have to think about who they were made about, right? Counsel, in this case the communication comes from outside to an officer inside the company. But is Trudy and me officers separate from the company? Not talking about the officer as if the company and the officer are one and actually saying this is what's going on, you should be cautioned and take action. So it separates them. Well, I mean, these people are separate individuals. I agree. But those comments are being made in the role that the individual is playing as the chief revenue officer or as the two members of the board of directors. And they are the ones who act for the company. So in the examples that I was just giving, if we're going to have a meaningful way to work out the line here, I think it's the people who drive the company. If it's not the C-suite and the board of directors, then who is it? That's kind of my question, is where do we draw the line? When you say the people who drive the corporation, there's the people who clean the carpets, the people who whatever. And then there's the board of directors, and then there's the CEO. One of the things I'm thinking about is how we talk about corporate law and corporate structure, agents, fiduciary duty. I mean, how do all those ideas fit in? In other words, can you help us? Where would we draw the line under your theory? Well, what we're recommending, Your Honor, is that where you ultimately decide to draw the line I think is probably a different case than the one that's presented to you today. I think today presents a relatively straightforward case because we're talking about people who are in the C-suite and who are members of the board of directors. I don't know what C-suite means. I mean, yes, I do. But I mean, what does that mean? What do those words mean? What is the relationship that these people have to, as you say, running the company? Is that what we're looking at? I do think that is what we're looking at, Your Honor. So I think the way to draw the line or to think about this is who's in charge of making decisions on behalf of the company to drive it? So along the analogy that I gave about if you're told that a company's angry, same thing when a company issues a press release and says, we are happy to report, the company's happy to report. The company's not experiencing the emotion of happiness. The people that run it, who cultivate it, who've decided what it cares about have decided they're happy about this development, right? And the people making those decisions should be considered the company for purposes of publication. And I think the reason that that is critical is because there's certainly talk about the application of privilege, but before we get there, we should be considering whether or not there's actually been the wrong that the tort is designed to protect against. And I think I'll circle back to it, but in a per se case, that's particularly relevant. I think it's telling that the only count that's brought in this complaint is a per se defamation case. The law in Illinois does offer additional possibilities of causes of action that could have been brought. There could have been a tortious interference claim brought. There could have been an unfair trade practices claim brought. All of those things allow a party to allege that somebody has made an improper representation, has engaged in some sort of misconduct, but they have to show damages, right? And that's a protection that I think people should have under the law is that the court doesn't get involved in every dispute between all people. Otherwise, they'd be involved in all kinds of fights, right? We typically have to show damages. The thing that's unique about a per se defamation case is that those damages are presumed. But now we're talking about also presuming reputational harm. We're saying that because it's a company. Getting back to where we draw the line, you said we don't have to decide that. In this case, however, are you saying that it would be limited to the board of directors and CFO? Is it CFO, CEO, COO? I mean, who are the people that form the culture? Is that a finite list or is that something that is case by case? How do we define that? That's a good question. I don't know that there's going to be a bright line rule based on title, right? I do think what we've offered here is a workable solution, which is that members of the executive leadership team, members who hold a chief title, the chief revenue officer, the chief operations officer, they are the ones who are sitting there making decisions that run the company and deciding what its reputation is and what it should be. Those companies are going to make decisions about how they should be viewed in the company and what they care about and how their reputation is impacted. And the people making those decisions should be considered the company for purposes of reputational harm. Otherwise, any comment made to a corporation that it dislikes could serve as the basis for a defamation claim. And there's no gatekeeping threshold any longer to prevent those cases from going in. And I don't think it's an answer to say, well, then we can address issues of whether there's a qualified privilege, for a couple of reasons. First, a qualified privilege is an affirmative defense, and that shifts the burden from the plaintiff to the defendant to establish that there was some legitimate basis for it to make the statements that it made. But we now never require the plaintiff to actually meet its burden to establish that the harm the tort was intended to protect against, reputational harm, has actually occurred. So the resources of the parties are being used, the resources of the court are being used, all without any sort of consideration as to whether there's been reputational harm. And I think to your point, Your Honor, there are certainly, I will acknowledge that this is not a series or not an issue that allows itself to be resolved in one fell swoop. There are going to be cases that follow that may ask questions about folks lower down in the corporate structure. And it may be necessary for a court to evaluate whether publication has actually occurred. But the danger posed by the appellate court's opinion is that we don't consider that at all. We don't consider at all whether there's been reputational harm because we're not considering whether there was a publication. And to drive this point on, one of the things that we said in our brief and we've argued throughout this litigation is consider a single-member LLC. In that case, under this court's opinion, if a statement's made to the sole member of that LLC, it could be considered published because the sole member is a different entity than the LLC. That doesn't make any sense because there's clearly been no reputational harm. Think also about that same single-member LLC and then think about somebody who's engaged in the exact same practice. To follow on the theme of today's arguments, let's say we've got some carpet leaders. One is operating as an LLC. The other one's operating as just a sole proprietor with no corporate form. Statements made about the actions of the LLC to its sole member would be actionable under this rule because there's been a publication, because they're separate entities. The exact same statement made to the sole proprietor is not actionable because there's no risk of reputational harm. And without risk of reputational harm, there's no basis for the tort. That's black-letter law, right? And I do think we have to get there somewhere. The solution is not to say that everything made to anyone who runs a company has been published and that there's been reputational harm because then we do slingshot well beyond what the tort was designed to protect against and we just go right to what the remedy should be. And in a defamation per se case, we don't even have to plead or prove damages. They're just presumed, right? So we're presuming reputational harm and then we're going to presume damages all for a corporate entity that doesn't need that sort of protection. And as I mentioned earlier, there are other items that could be used to address the concerns that I think are troubling members of the court, that trouble the appellate court, and that is that you could consider bringing a tortious interference claim. Under Illinois law, a person's business relationships constitute a property interest. And as such, they're entitled to protection from unjustified tampering by another. That tort applies where the defendant engaged in intentional and unjustified interference that prevents the realization of business expectancy and damages from the interference result. Illinois courts held that it doesn't rely on the existence of an enforceable contract and that an employment or that an at-will relationship could serve as the basis for the cause of action. So in this case, had an individual left as a result of this and there was some sort of interference, you would have a tortious interference claim that would potentially be available. I think one of the hiccups would be is you have to show actual damages in order for that tort to be viable. You have to show that something bad actually happened. And there's no indication that that did in this case. There could also be a claim under the Uniform Deceptive Trade Practices Act. And the purpose of the Deceptive Trade Practices Act is to prohibit unfair competition. And it's primarily directed toward acts that unreasonably interfere with another's conduct and his or her business. Section 2A8 of that statute prohibits someone who in the course of their business disparages the goods, services, or business of another by false or misleading representations of fact. Again, the law provides appropriate avenues for relief that don't require us to expand the tort of defamation beyond its bounds. Now, you're going to have to show damages, and that's difficult, perhaps, but there is a remedy available. If we just go back to defamation per se, without giving any consideration to publication, then we have created a very unique animal that really serves to benefit corporations when I don't think they need that sort of protection. There certainly may be instances where the facts that are presented preclude this finding. Or maybe somewhere down the line, evidence has to be suggested. I would say a plaintiff at a minimum should have to plead facts to indicate that there has been a publication, given that it's their burden. To assume otherwise that any human being to which a statement is made has been published on behalf of the corporation certainly raises some big, difficult considerations. And when you think about that single-member LLC scenario, right there we know that the tort is no longer doing what it's intended to do because there is no longer reputational harm at issue, and yet damages are available. And I will agree that this question gets more complicated as we get into more complicated structures, but it doesn't mean that it's not worth the exercise. The tort of defamation is concerned exclusively with protection against reputational harm in the community. The appellate court's opinion expands the tort well beyond its intended scope, and the rule that we have proposed draws a reasonable line by which courts can operate. Those who direct the company are the company for purposes of publication. Applying that rule to this case establishes that Judge Snyder correctly granted Forkite's motion to dismiss, and we respectfully request that this court enter into order overruling the appellate court's decision and affirming the decision of the trial. With that, I yield the remainder of my time. Thank you very much. Good morning, and may it please the Court. My name is Doug Alvord, and I represent the plaintiff, Project 44, in this matter. The constitutional right to free speech does not protect what Forkite's is alleged to have done in this case, and neither does, nor should, any rule regarding the element of publication in the tort of defamation. This case is unusual because competitors do not usually act as Forkite's did. That issue will inform the other arguments that I'm going to address to the Court, because after all, Forkite's tried to conceal its identity and used fictitious e-mails and actually published two defamatory per se e-mail communications to two outside members, non-employees of Project 44's board of directors and to a recently hired chief revenue officer. And to be sure, the circuit court held at the end of its oral argument that those publications could be found to be defamatory per se. We had to petition parties before suit to figure out who sent them, who was doing this to the company. And I want to be clear. Project 44 is well within its rights to plead defamation per se claims because Illinois already recognizes and has for a long time that it is often extremely difficult, if not impossible, to present evidence to support an award of compensatory damages based upon the actual harm suffered. And this case does not present an opportunity to this Court to undo that law which has lasted forever. The appellate court more forcefully analogized these publications to attempts at corporate sabotage and to inject chaos into Project 44's workplace, and that's exactly what they were. Now, important to the consideration of the publication issue is there can be no doubt that these three people, as a matter of fact, are different actors than Project 44. They are actual people, after all, and as Your Honor noted in a question to my good friend, that's certainly how Fort Kites thought of them when these communications were sent to their attention. It didn't send them to the company. It sent them to three individuals and sought to drive a wedge between those individuals and the employer that they worked for. Counsel, what about this argument? Well, look, you could have sued for intentional interference with contractual relations or business practice, and then you would have had to prove damages. Sure. Well, a couple of things about how the case began. We filed the petition to figure out who did this within days of receiving the second communication. It was three days. We then were winding our way through the circuit court process and were coming up on the statute of limitations. We uncovered some footprints. We didn't get to the point where we figured out who the cell phone user was. And with the statute of limitations upon us, we filed a defamation claim to make sure that we didn't have any statutes of limitations arguments. So number one, we were in a hurry because I think the court was a little maybe slower than usual because of COVID. Number two, we had the goods, and so let's start here. And what we wanted to first discover was who sent these communications? Who were the person or persons behind this? And then maybe we would have admitted our complaint after we had found that out. But under Illinois law, we were certainly afforded the right to bring a defamation per se claim, and that was the tool that we used to try to figure out who at our competitor is trying to inject chaos into our workplace. The law did not require us to plead a tortious interference claim, and maybe if we had got to other discovery, we would have learned something to do that. But this was the claim that we went with, I think, to answer your last question. Now, that point, by the way, that Forkites viewed these people as different than the company addresses its unprecedented claim that a corporation can never suffer reputational harm when certain people are spoke to. And let me just address the fallacy with that argument. Forkites is asking this court to create a heretofore unknown standard exempting certain people from ever being able to receive a defamatory communication at a company. And then everybody else below that is still going to be subject to the same qualified privilege analysis that the appellate court put into its ruling and which we're advocating for. We're not saving anything. Forkites is not saving any time. It is not closing any floodgates by saying that 2 or 3 or 4 or 5 or 10, and we can't even figure out how to define them, people would never be able to provide the basis for a corporate defamation claim against a sabotage effort like this because, take Project 44, for example, today they have about 800 employees. All right, if we exempt 10 of them, as Forkites asked this court to do, if the other 790 receive these defamatory communications and Project 44 brings a defamation claim, there is still going to have to be, per the First Circuit's ruling, a qualified privilege analysis to figure out whether those communications were protected or not. So Forkites is not closing a floodgate or stopping a harm. If anything, they're just asking this court to engage in a needless exercise which just exempts them and tries to protect them from what they did in this case. And that is not a good reason to change defamation law. Now, we admit that this particular publication issue, of course, is unprecedented for this court. I think that's because it's been rare for corporate actors in the state to act as Forkites did. I won't repeat everything that we've said in our brief, but we think that the first appellate court should be affirmed. We think that while the analogy, as it's said, is not a perfect one, how we treat corporate speakers and inter-corporate communication defamation cases should inform us here. And I would put it this way. There is no principled reason where we should treat a particular person, let's say John Doe, differently if the defamation at issue is a communication that he had with his co-worker, and then we should treat him in a different way if he is the recipient of a defamatory communication from somebody outside the company. There is already a large body of law in Illinois, at least a developing body of law, about how inter-corporate communications and actors should be thought of, and that always defaults back to an absolute or a qualified privilege if there's a challenge. And there is no principled reason I would submit, none, for why we should treat the same person differently based upon the source of the alleged defamatory communication. Now think about what would have happened to Mr. Popko, for example, if Forkite's premise was followed here. In that case, he had won a jury verdict, but if Forkite's rules were followed, neither he or the other purported witnesses were ever asked anything about the claims made against him. They weren't investigated. And the reasons offered for his dismissal at trial were completely different than what they had told him. And if Forkite's rule applied in that context, he'd have no claim. And that would be very contrary to how Illinois law views these kinds of issues. The appellate court described its approach, based upon these inter-corporate communications, as part of a growing majority of jurisdictions, and the appellate court cited various learned treatises in its opinion. That approach, published but potentially privileged, appropriately protects communications done, for example, in the context of a misconduct investigation from, say, defamatory communications by a co-worker seeking to ruin the career of another co-worker. And again, the Illinois law recognizes publication in the inter-corporate communication context necessarily addresses the sky will fall and the floodgate arguments that my good friend makes for his client. It's not true. If it was, that would be happening in those kinds of cases, and it's not. And there's no reason that's been argued, and there certainly is no data and no precedent cited to say that our lower courts are having any trouble grappling with or dealing with, on a day-to-day basis, these qualified privilege questions. They get litigated every day, they're easy to handle, and they're not causing a floodgate or a disaster of litigation. So, in our particular case, when we have a corporate sabotaging seeking-to-drive-a-wedge competitor using a very unique recruitment tool, is Illinois going to close the door and shut these kinds of claims simply because of who the recipients are when there is no law for how the courts should draw that line and when there's no precedent saying how we should seek to do that? I would also say, in that regard, that this court in the state of Illinois traditionally followed the restatement second of torts when we handled defamation claims. And the restatement addresses this issue in Section 577, Comment E, and provides that communication to a servant or agent of the person defamed is published. And so, if the court is inclined to try to draw a line that I think can't be drawn, it's going to create an exception to the restatement which this court and which the lower courts traditionally follow in the defamation context. And, by the way, Comment E has a couple of things going for it. It's actually true. When a third party makes a comment to an employee of a competitor, it actually is making a publication to another person. If we adopt the Four Tides rule, we're adding another fiction into the equation. Except, comma, and then we've got to figure out the rest. The rule also, the comment also utilizes a framework the courts are already familiar with, which is the point I just addressed. Now, Fawcett, Fawcett is a decision from a federal district court in Utah in 1982. It was attempting to predict what it thought Utah might do. Utah has never spoken on this issue. The Utah Supreme Court has never addressed this issue. And, certainly, our research also failed to uncover any Utah inter-corporate decisions on how they would treat actors in that context. It's only been cited one more time in Utah by another district court. And so Utah hasn't spoken on this issue. And I would submit to the court, while we could respect and consider as persuasive our sister federal court decisions, in this instance it's a very important issue and the state hasn't addressed it. Now, the word that the Fawcett court uses for the line that my good friend wants to try to draw is management. Now, note that that's not the word my good friend is using in the court today. Now we're using the undefined C-suite. Good luck figuring that one out in research. It's undefinable. And, by the way, different companies use different words. Different companies invite different people to management. And so whether we use C-suite or another phrase from my good friend's brief, the embodiment of the company, these are unworkable. And they are not going to result in a standard that's going to give our lower courts any direction on how they should do things. And I would say, by the way, too, incidentally, most business people probably would say whatever the C-suite is, it doesn't include board of directors. So now we have to separately add that into the equation. I offered a different idea, thinking about corporate law. Who has the fiduciary duty, for example? We have a whole body of law that sort of sets out what obligations different people in the organization have to the larger organization. So why couldn't we use something like that? It's a great question. Number one, you get a different answer every time you ask it. And so if we think about the context of a conspiracy claim where the chief financial officer is alleged to have conspired with his company or her company in the commission of some tort, in the absence of an exception standard, we would treat the person as the same as the company and elementary courts would say that no claim for conspiracy can stand. On the other hand, if that actor acts outside the scope of his or her agencies and for his or her own benefit, then that exception doesn't apply and a claim for conspiracy against the company and the actor would stand. And doesn't that sound an awful lot like what happened here? These communications were not to the outside board members or to the brand new chief revenue officer about something regarding the company that this sender wanted to bring to the company's attention. These were communications outside the business to these three people as individuals and as the court asked in my good friend's argument, seeking to drive a wedge. And so in another context about Your Honor's question, the business judgment rule works the same way. And so the law wants to protect an actor who, on behalf of his company or her company, wants to undertake a corporate decision to make sure that he or she isn't going to be sued for it. If they act in good faith, they can't be. But again, on the other hand, if they act outside of good faith, they could be individually sued. Attorney client privilege is another example that I was thinking of the control group. The control group yields different answers to this question depending upon the case. If, for example, I was handling a labor and employment case for my client, I might describe the control group as somebody in HR. It wouldn't necessarily be the head. It might be the salesperson who was making the complaint about a coworker or some issue. It might be the general counsel. Now, if I'm handling a commercial case for my client, if we think about attorney client privilege, the control group test is going to yield a different answer. And so I think Your Honor's question is a great one, and I think it goes precisely to why Forkyte's argument here is wrong. When we think about corporate actors, but I should say one other thing. You don't have to be in management to buy into a company. And so, again, think about an organization like Project 44 that has 800 employees. Anybody in the sales department or anybody in building management or anybody in any other divisions can enter into a contract and buy into a company to clean their carpets, deliver food for the lunch that's being catered for the customers that are visiting, to provide air conditioning, to do rent. And so Your Honor's question, I think, precisely highlights why asking that question doesn't help us in this area at all and, in fact, creates more chaos and more havoc than there should be. And, again, I come back to the point I made at the beginning. Their rule is only seeking to carve out a limited number of people, and the lower courts alike are going to have to continue engaging in the qualified privilege analysis for everybody else under them. And why would they go to that exercise? There's no good policy reason, and there's no good legal reason, and there's certainly no precedential reason to do any of that. Now, a couple of other things I'd like to say about their proposed standard. I think, to Your Honor's question, Illinois law does not treat management or the C-suite as the embodiment of the company in every circumstance. That's the point he just made. I talked about the business rule. And I want to come back to the point that was asked by my good friend at the beginning of this argument to emphasize in response to that last question. Forkite certainly didn't think of these people that way, and so why should we change Illinois law to protect them when that isn't even this case? So, in short, to close on that point, Forkite's standard advances an absolute privilege akin to First Amendment protections of public figures in matters of the utmost national importance, but that's not this case. I'd like to conclude my remarks. Forkite's is pressing an unprecedented, philosophically unsupported, and finally undefined standard solely to excuse itself from the bad conduct that it engaged in here. There's a significant cost to this proposal. As the appellate court reasoned, Forkite's use of the publication element to shut the door goes too far, as it protects those who transmit false messages in bad faith. In contrast, the appellate court standard is supported by various learned treatises and the restatement, which Illinois generally follows in defamation cases, except in very unusual matters, and that's not this. And the appellate court standard is consistent with how corporate actors are analyzed in the inter-corporate communication context, and we should not throw that aside. Finally, adopting Forkite's proposal turns a blind eye to what actually happened here and will encourage ill-behaved corporate actors in the future to pursue new recruitment policies based upon defamatory claims. That is not a welcome or civilized outcome. If you don't have any more questions, I'll deal back the rest of my time. Thank you very much. Thank you. Counsel William Butler. A few points on the following, Your Honors. First of all, as my friend just indicated, he asserts that this would be an absolute privilege and would allow people to submit false messages in bad faith. It's not an absolute privilege. It's a recognition of how the tort actually works. When we say that the Black Letter Law is that statements made only to the individual about whom those messages are made, that's not a privilege. That's a recognition that the harm that the tort is designed to protect against isn't actually occurring. And it's also not a guarantee that you can make false messages in bad faith. I've identified two potential causes of action here, and I'm sure there are others that would allow for a remedy when that happens. This really sort of goes past what we're really trying to figure out here, which is has reputational harm actually occurred? And to the Chief Justice's point, if you think about whether or not it's a fiduciary duty test, whether it's the control group test, those are all tests that exist under the law and that courts have been more than capable of applying to figure out whether or not a cause of action exists. There's no reason a court can't do that here. And I'm also not here telling you that I don't think that this poses some difficult questions at some point. I don't think this case poses particularly difficult questions, but at some point it might. But that doesn't mean we should throw up our hands and say, you know what, we're actually not going to be very concerned about it. With respect to comment E, I would say that comment E, it does say that a communication to a servant or an agent or a person of the fame is a publication, but in Fawcett, they think about that. That court thought about it really critically, and they explained why it didn't apply. And it's because each case that underlines that portion of the restatement is an intracompany communication case. And I cannot state strongly enough this is not an intracompany communication case. In each one of those cases, you will see it's a comment made from one person to another about a real person. And we are struggling with something very different here, is what happens when a comment is made to the people who lead the company, the people who make the decisions about what they want its reputation to be. If those people aren't considered the company, I'm not sure how we're going to effectively apply this statute. I would also say that it likely will be a case-by-case analysis, at least in some instances where you're going to have to look at some of those things. And perhaps a defendant or a plaintiff is going to have to plead actual facts to support their case. But, again, that doesn't mean that we shouldn't be critically looking at whether or not the actual harm that tort is designed to address has actually occurred before we start punishing people for the words that they speak. Thank you. Thank you very much, both sides. Agenda number 10, number 129-227, Project 44, Inc. vs. Fort Kites, Inc. will be taken under advisory.